**DOVER STEEL COMPANY, INC., et al., Plaintiffs,**

v.

**The HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Defendants.**

**Civ. A. No. 92–5697.**

United States District Court, E.D. Pennsylvania.

Nov. 9, 1992.

**64**

Brian P. Kenney, Elliott, Bray & Riley, Blue Bell, Pa., for plaintiffs.

James A. Young, Christine G. Tershakovec, Christie, Pabarue, Mortensen & Young, Philadelphia, Pa., for defendant Hartford Acc. and Indem. Co.

James Schaller, Victoria H. Roberts, Rawle & Henderson, Philadelphia, Pa., for defendant New Hampshire Ins. Co.

## MEMORANDUM

ROBRENO, District Judge.

Presently before the Court is plaintiffs' motion for a preliminary injunction. For the following reasons, the motion will be denied.

## I.  BACKGROUND

This is an action brought by plaintiffs Dover Steel Company, Inc. ("Dover") and A.M.B. Construction Company, Inc. ("A.M.B.") against two insurance companies, defendants The Hartford Accident and Indemnity Company ("Hartford") and New Hampshire Insurance Company ("New Hampshire"). Jurisdiction is predicated upon 28 U.S.C. § 1332. Plaintiffs, among others, have been named as defendants in a suit now pending in the United States District Court for the District of Delaware ("the Delaware action").[1] In their complaint filed in the case now before this Court, plaintiffs contend that both defendants are obligated, under certain insurance policies which each issued to plaintiffs, to provide plaintiffs with a defense in the Delaware action and to indemnify plaintiffs for any damages that may result therefrom. Plaintiffs allege that the defendants are wrongfully refusing to provide such a defense, and are wrongfully refusing to acknowledge their obligation to indemnify.

Plaintiffs filed the instant complaint in this Court on September 30, 1992, together with a motion for a preliminary injunction. In their motion, plaintiffs ask the Court to: 1) compel the defendants to immediately tender approximately $125,000 to plaintiffs, representing the amount that plaintiffs contend plaintiffs have already expended in defending the Delaware action, and 2) require the defendants to assume all costs that plaintiffs will incur in defending the Delaware action from this point forth.[2] In support of their motion, plaintiffs assert that Dover[3] will suffer irreparable harm if the injunction is not granted in that Dover is on the brink of financial collapse and will soon file for Chapter 11 bankruptcy if it is not reimbursed for the legal fees it has already expended in defense of the Delaware action. Plaintiffs also, of course, assert that their eventual success on the merits of their claim is likely. In essence, plaintiffs are proceeding on the theory that at least one of the two claims raised in the Delaware action comes squarely within at least one of the insurance policies issued by New Hampshire, and that, in any event,

---

1. That suit is captioned *Standard Chlorine of Delaware, Inc. v. Anthony R. Sinibaldi, et al.,* Civil Action No. 91–188 (D.Del.1991). Most of the eight defendants named in the Delaware action that were not named as plaintiffs in this action are affiliated with Dover in some way.

2. Plaintiffs raise no arguments, at this point in these proceedings, as to whether the defendants should be permitted to retain substitute counsel of defendants' choice for this task, or whether plaintiffs should be allowed to retain their current counsel.

3. Plaintiffs state that A.M.B. was the predecessor of Dover and that A.M.B. is no longer a going concern. The Court is forced to wonder why plaintiffs have themselves chosen to sue, in part, in the name of a corporation that they know no longer exists. All of the facts to which the Court has been made privy relate to Dover, and have only questionable relevance vis-a-vis A.M.B. The Court, nonetheless, will make no ruling at this time regarding whether A.M.B. is a proper party plaintiff. The Court will refer to "plaintiffs" when addressing the arguments they raise, but will refer to "Dover" when addressing the factual allegations at issue.

both defendants gave certain assurances and took various actions so that they are now both estopped from denying coverage.

Following expedited discovery, this Court held a hearing on plaintiffs' preliminary injunction motion on November 3, 1992 and November 4, 1992. *See* Fed.R.Civ.P. 65(a). At the hearing, plaintiffs presented testimony from three witnesses. Only one of the three, Mr. Anthony Sinibaldi, president and one of the principal shareholders of Dover, offered testimony on the issue of whether plaintiffs will suffer irreparable harm if an injunction is not issued.[4] After the conclusion of Mr. Sinibaldi's testimony, the defendants urged the denial of plaintiffs' motion for a preliminary injunction on the ground that plaintiffs had failed to show irreparable harm. The Court denied defendants' request, but agreed to reconsider the issue at the conclusion of plaintiffs' case. After plaintiffs rested, defendants renewed their request, and have not yet had occasion to answer plaintiff's claims. For the reasons set forth below, plaintiffs' request for preliminary injunction is DENIED on the basis that they have failed to make the requisite showing that irreparable harm will ensue from the denial of the relief requested. To the extent that plaintiffs' motion includes a request for reimbursement of the attorneys fees that they have already expended, the motion is alternatively denied on the ground that such an award is in the nature of money damages which, under the circumstances of this case, are not available as preliminary injunctive relief.

## II. DISCUSSION

■ The factors governing whether a preliminary injunction should be awarded are well established:

> In order to support a preliminary injunction, plaintiff must show both a likelihood of success on the merits and a probability of irreparable harm. Additionally, the district court should consid-

er the effect of the issuance of a preliminary injunction on other interested persons and the public interest....

*Campbell Soup Company v. Conagra Inc.*, 977 F.2d 86, 90–91 (3d Cir.1992), *quoting Bradley v. Pittsburgh Board of Education*, 910 F.2d 1172 (3d Cir.1990). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury ... must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137 (3d Cir.1982). Ultimately, determining whether a preliminary injunction should issue is within the sound discretion of the district court. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir.1982) (en banc).

■ Plaintiffs allege that they will suffer irreparable harm if they are denied the injunctive relief they request because without it they will be forced into bankruptcy. There is no doubt that, under certain circumstances, the prospect of imminent bankruptcy may constitute irreparable harm for purposes of awarding preliminary injunctive relief. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Associated Producers v. City of Independence, Mo.*, 648 F.Supp. 1255 (W.D.Mo.1986).

As noted, plaintiffs seek two forms of injunctive relief. One is retroactive—immediate reimbursement for defense costs already expended; the other is prospective—an order requiring the defendants to undertake their defense in the Delaware action. These two forms of injunctive relief will be addressed separately.

A. Compelling Defendants to Reimburse Plaintiffs for the Costs of Defense Incurred to Date

1. *Plaintiffs' Failure of Proof Regarding Dover's Financial Condition*

■ The Court concludes that plaintiffs have not met their burden of demonstrat-

---

4. The other two witnesses were Mr. Frederick P. Santarelli, a lawyer at the law firm of Elliott, Vanaskie & Riley, counsel in both the Delaware action and this case, and Ms. Adele Johnston, an accountant at Dover. Plaintiffs also moved into evidence the deposition transcripts of Richard Galperin, Michelle Heaton, and Samuel T. Good, Jr. None of the testimony or documentary evidence offered through these witnesses related to plaintiffs' burden to show irreparable harm.

ing that immediate reimbursement of the $125,000 is necessary to stave off bankruptcy.[5] The plaintiffs' proofs were wholly deficient, consisting only of vague, general testimony relating to Dover's current financial condition. Plaintiffs did not introduce, as they should have, any financial statements, tax returns, general ledgers, or other documentary evidence of Dover's financial health. In fact, there was no evidence presented concerning Dover's assets and the extent to which they were subject to liens, or of Dover's general liabilities. To the contrary, the specific facts which were proffered by plaintiffs do not support the claim that bankruptcy is imminent and unavoidable. To wit, Mr. Sinibaldi testified that Dover is currently working under one contract that is enabling Dover to cover payroll and taxes. Transcript of Day 1 of Preliminary Injunction Hearing ("Transcript"), p. 17. He also stated that Dover has several bids currently pending on various contracts, and that "one good contract could turn this around overnight." Transcript, p. 72. Dover also apparently has an authorized line of credit with Wilmington Trust which would, according to Mr. Sinibaldi, become available if Dover is awarded an additional contract. Transcript, p. 71–72. Dover has also apparently managed to survive for some time despite its allegedly dire condition. For example, Mr. Sinibaldi testified that Dover has been existing "hand to mouth" since September of 1991, and although Mr. Sinibaldi also testified that conditions have recently become worse, (Transcript, p. 76), plaintiffs presented no corroborative evidence that Dover's financial condition is any more severe now than it was in 1991. Very probative was the lack of evidence of any litigation pending or judgments entered against Dover. Finally, and most curiously, Mr. Sinibaldi failed to explain why a $400,000 receivable owed to it by Standard Chlorine, the plaintiff in the Delaware action, was simply "[written] . . . off" by Dover. Transcript, p. 77.

The strongest evidence of Dover's financial distress involves a claim that Dover's workers' compensation insurance expired on October 30, 1992, that Dover will be unable to renew its policy at the cost quoted, Transcript, p. 80–81, and that Dover's receivables (excluding the unexplained $400,000 owed by Standard Chlorine), amount to only half of its payables. Transcript, p. 72–73. However, because, as discussed above, plaintiffs failed to present an adequate financial picture of Dover, the Court is unable to evaluate whether, on balance, Dover's financial circumstances are so precarious as to compel a finding that bankruptcy is imminent and unavoidable.[6]

5. Defendants contend that the dollar amount of the attorneys' fees at issue is actually much less than $125,000 and that about $42,000 was paid by Mr. Sinibaldi personally and not by Dover. Since the Court concludes that plaintiffs have failed to show that payment of even $125,000 would have an effect on any potential bankruptcy, the Court does not need to address defendants' argument.

6. Assuming that bankruptcy was imminent and unavoidable, under the circumstances described by Mr. Sinibaldi, plaintiffs also did not offer convincing evidence that payment of $125,000 alone would allow Dover to avoid bankruptcy. The only evidence to that end was Mr. Sinibaldi's naked assertions that the money would be "put back into the company" and would "make [Dover] viable" for "perhaps a couple of months." Transcript, p. 21. In fact, there is evidence to indicate that, under the scenario painted by Mr. Sinibaldi, the $125,000 would not be enough to allow Dover to remain operational. For example, if the cost of the workers' compensation insurance necessary to keep Dover in business is $200,000 (Transcript, p. 81), payment of $125,000, in and of itself, would not suffice to keep Dover operational. Further, Mr. Sinibaldi stated in his October deposition that the company needed "about $300,000" to remain operational over the next few months. Transcript, p. 80. In the final analysis, and as was testified at trial by Mr. Sinibaldi, it appears that whether or not Dover files for bankruptcy revolves around two factors over which the court has no influence: first, the state of the economy, which may determine whether Dover will get any of the contracts for which it has bids pending, and second, Dover's general business reputation, which has apparently been soiled as a result of the allegations of impropriety against it and its principals in the Delaware action. In light of the foregoing, it appears that even assuming Dover's bankruptcy is imminent, payment of the $125,000 would not be sufficient to prevent it.

### 2. Collection of A Disputed Debt by Means Of Preliminary Injunctive Relief

■ An alternative ground for denying plaintiffs' request for payment of $125,000 *pendente lite* is that plaintiffs herein are, in effect, asking the Court to require defendants to pay plaintiffs the damages plaintiffs seek in the underlying contract dispute while that dispute is in the process of being litigated.

Plaintiffs' claim to immediate payment is foreclosed by the Third Circuit's decision in *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137 (3d Cir.1982). In that case, a franchisee withheld royalty payments to the franchisor on the ground that the franchisor had breached the franchise agreement. During the pendency of the resulting suit brought by the franchisor, the district court issued a preliminary injunction ordering the franchisee, *inter alia,* to immediately reimburse the franchisor for the back royalty payments that the franchisee had withheld. The district court found that without issuance of the injunction the franchisor would be forced to file for bankruptcy and, therefore, would suffer irreparable harm.

The Third Circuit reversed the grant of the preliminary injunction. The Court framed the threshold issue as "whether the district court may award damages at a preliminary stage of the proceeding and prior to factfinding and final judgment." *Arthur Treacher's,* 689 F.2d at 1144. In answering that question in the negative, the Court relied upon *Schlosser v. Commonwealth Edison Company,* 250 F.2d 478 (7th Cir.), *cert. denied,* 357 U.S. 906, 78 S.Ct. 1150, 2 L.Ed.2d 1156 (1958) (retired employee sought to recover monies which he claimed were due and owing under annuity program in existence at the time of his retirement). The Court quoted that portion of *Schlosser* which stated that:

It is indeed a novel theory that in an action for the recovery of damages the right to which is controverted by defendant, a preliminary injunction should issue to require a defendant to make payments in advance of a determination of the case on its merits.

*Arthur Treacher's,* 689 F.2d at 1145, *quoting Schlosser,* 250 F.2d at 480–81. The Court also quoted no less venerable an authority than Judge Learned Hand, who had opined that:

Under the guise of a mandatory injunction I do not see how I can give final relief in advance of answer and trial [in a case for conversion of money]. It is, of course, true that equity will at times affirmatively restore the status quo ante pending the suit. But never, so far as I know, will it take jurisdiction over a legal claim merely to hurry it along by granting final relief at the outset of the cause.

*Arthur Treacher's,* 689 F.2d at 1145, *quoting Sims v. Stuart,* 291 F. 707, 707–08 (S.D.N.Y.1922). In light of these authorities, the Third Circuit concluded that the district court's preliminary award of back royalties "misconceives the equitable nature and purpose of an injunctive proceeding." *Arthur Treacher's,* 689 F.2d at 1145.

These principles apply with equal force to plaintiffs' claim for preliminary payment of the attorneys' fees they have expended to date. Plaintiffs do not contend that defendants hold the $125,000 under an express trust, *see In re Penn Central,* 486 F.2d 519, 524 (3d Cir.1973) (en banc), *cert. denied,* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), or that the funds in question are otherwise subject to tracing. To the contrary, plaintiffs are general creditors seeking relief that is legal rather than equitable in nature, stemming from a contract debt allegedly due and owing.[7] To

---

7. The instant situation does not compel a different result even if it is recognized that under Pennsylvania law, the choice of law urged upon the Court by plaintiffs, in certain dealings with their insureds, insurance companies owe their insureds a fiduciary duty. *See Gray v. Nationwide Mutual Insurance Co.,* 422 Pa. 500, 223 A.2d 8 (1966); *Gedeon v. State Farm Insurance Co.,* 410 Pa 55, 188 A.2d 320 (1963). The relationship at issue in *Arthur Treacher's,* franchisor-franchisee, was also a fiduciary one, *see, Atlantic Richfield Co. v. Razumic,* 480 pa. 366, 390 A.2d 736 (1978); *Loos & Dilworth v. Quaker State Oil Refining Corp.,* 347 Pa.Super. 477, 500

award plaintiffs the $125,000 payment they seek now would be tantamount to making available to plaintiffs the financial fruits of victory when their right to obtain judgment remains at issue.[8]

### B. Compelling Defendants to Prospectively Assume Plaintiffs' Defense of the Delaware Action

██ The question of whether the defendants can be compelled, at a preliminary stage of the proceedings, to *prospectively* assume plaintiffs' defense in the Delaware action presents a closer question than that relating to payment of past damages. On this record, however, such remedy is not available to plaintiffs. As a threshold matter, the Court notes that it has already determined that plaintiffs may not recover the $125,000 payment at this time through a preliminary injunction. If plaintiffs are correct in their prediction and Dover does, in fact, soon file for bankruptcy protection,[9] the question of defendants' obligation to undertake plaintiffs' defense becomes moot because the Delaware action would be stayed by operation of the bankruptcy automatic stay, thereby obviating the need for an immediate defense. *See* 11 U.S.C. § 362(a).

The question of defendants' obligation to provide a defense becomes relevant only if Dover stays out of bankruptcy. If Dover avoids bankruptcy and seeks to continue to defend the Delaware action, the issue of irreparable harm would arise if plaintiffs' attorneys choose to withdraw and were allowed to do so by the court and a significant legal event was in the offing (trial or argument on a significant motion) which plaintiffs were without the legal wherewithal to handle. Regrettably, Dover offered no evidence that counsel representing plaintiffs in the Delaware action intend to withdraw their representation in the near future or that there is some legal event or deadline that plaintiffs will not be able to meet unless insurance company retained counsel enters an immediate appearance. Therefore, on this record, the court can not conclude that irreparable harm would ensue if defendants do not undertake an immediate defense of the Delaware action.[10]

---

A.2d 1155 (1985), a matter of no moment in the Third Circuit analysis. It is also instructive that *Arthur Treacher's* distinguished *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495 (4th Cir.1981), a case like the instant one where it was alleged that past payments under a certain insurance policy should be made, *pendente lite.* There, the Fourth Circuit did not direct the payment of money but, instead, required the insurer to process the claim in good faith under the insurance contract. *Id.* at 500–501.

**8.** Significantly, the *Arthur Treacher's* Court also found error in the district court's conclusion that the franchisor would suffer irreparable harm without an injunction, holding that the franchisor would not be forced to file for bankruptcy without the franchisee's back royalties. The court specifically withheld judgment on the question of whether the rule precluding recovery of disputed money damages *pendente lite* would be rendered inapplicable if the plaintiff could actually prove an impending bankruptcy. *Arthur Treacher's*, 689 F.2d at 1146, n. 11. This Court finds itself in an indistinguishable situation, since the plaintiffs herein have also failed to demonstrate that immediate reimbursement of legal fees will have an impact on whether Dover stays out of bankruptcy, as discussed in Section II(A)(1), *supra*. This Court, like the court in *Arthur Treacher's*, need not decide what effect actual bankruptcy would have on the rule

against recovery of money damages as preliminary relief.

**9.** Mr. Sinibaldi testified that he felt that Dover, without injunctive relief, would be filing for bankruptcy by the end of the week during which the preliminary injunction hearing was held.

**10.** While it is reasonable to foresee that plaintiffs' counsel will seek to withdraw their defense in the Delaware action if they are not paid for their services, no evidence as to when this may occur was adduced at the hearing. Although the initial fee agreement between plaintiffs and counsel does state that counsel would be compensated on an hourly basis, the court notes that the underlying action also involves a substantial counterclaim. Therefore, in the absence of proof, the court is left to wonder whether counsel is still engaged on an hourly basis or whether there is (or can be) a contingent fee agreement in place for recovery of damages alleged in the counterclaim.

Also relevant is the fact that Mr. Sinibaldi has stated that he is willing to pledge personal assets as security for any bond that Dover would be required to obtain if this Court was to grant the preliminary injunction. Significantly, Mr. Sinibaldi is also named as a defendant in the Delaware action, and, as plaintiffs have repeatedly argued to this court, the defendants in that

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction will be denied. Despite this denial, the Court nonetheless recognizes the need for some expedited consideration of the issues raised in this matter. Accordingly, the Court will set an early discovery cutoff and trial date.

action are so intertwined that defense of one is equivalent to defense of another. It would seem that whether Mr. Sinibaldi pledges his personal assets either as security for a bond or as collateral to finance the *Delaware* litigation, the effect is the same, i.e., Mr. Sinibaldi would be reimbursed if Dover prevails on the merits of this lawsuit.