Earl BRADLEY and Diane Murray

v.

**PITTSBURGH BOARD OF EDUCATION, Vernon Phillips, Individually and in his capacity as Principal of Letsche Alternative Learning Center, Alice Y. Turner, Individually and in her capacity as English Supervisor for the Pittsburgh Board of Education, Ruby Connor, Individually and in her capacity as Supervisory Program Specialist for the Pittsburgh Board of Education, Jo Ann Doran, Individually and in her capacity as English Supervisor for the Pittsburgh Board of Education and Lee Nicklos \*.**

Appeal of Diane MURRAY.

No. 89–3672.

United States Court of Appeals, Third Circuit.

Argued March 15, 1990.

Decided Aug. 15, 1990.

---

\* Caption rearranged to omit defendants sued only by coplaintiff Earl Bradley.

**1174**

Edward A. Olds (argued), Pittsburgh, Pa., for appellant.

David M. Neuhart (argued), Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for appellees.

Before SLOVITER, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal concerns the propriety of the district court's denial, without a hearing or findings of fact or conclusions of law, of plaintiff Diane Murray's motion for a preliminary injunction preventing defendant school officials from banning Learnball, a teaching methodology she favored, and retaliating against her for using and advocating the system. In the motion, plaintiff, a tenured high school teacher in a Pittsburgh public high school, requested that defendants, the Pittsburgh Board of Education, Vernon Phillips, Principal of the Letsche Alternative Learning Center, Alice Turner, English Supervisor for the Board of Education, Ruby Connor, Supervisory Program Specialist, Jo Ann Doran, English Supervisor, and Lee Nicklos, Director of Personnel, be enjoined from the following activities: enforcing the ban against her use of Learnball unless Phillips delineates every activity banned; disciplining plaintiff for violating the ban unless she is given written notice of the violation and an opportunity to respond to an uninvolved school administrator; and retaliating against her because she instituted an action against them or advocated the Learnball method. The district court denied the motion, as well as a request for a hearing on the motion, without discussion.

## I.

Plaintiff is an advocate of Learnball, a classroom management technique developed by Dr. Earl Bradley, also a teacher in the Pittsburgh public schools and a co-plaintiff in the district court. Learnball's basic elements, which include a sports format, peer approval, dividing each class into teams, student election of team leaders and an assistant teacher, giving students responsibility for establishing class rules and grading exercises, and imposing a system of rewards such as radio playing and shooting baskets with a foam ball in the classroom, are described in the Learnball Handbook. Murray is the executive director of the Learnball League International, which promotes the use of Learnball. Murray alleges that she has used Learnball in her classroom for over a decade and that the system has been adopted by many teachers.

Defendants were not supportive of Murray or Bradley's use of Learnball. They admonished both to limit their use of the method and Bradley was eventually fired, allegedly for violating orders that he cease using certain techniques associated with Learnball.

Murray filed suit on July 8, 1986, with Bradley as her co-plaintiff, alleging that defendants had harassed her because of her advocacy and use of Learnball and that they required her to limit her use of Learnball although there is no policy concerning general classroom management techniques teachers may use. She seeks compensatory and punitive damages, an injunction against violating her constitutional rights, and attorneys' fees. Defendants' motion to dismiss this suit was denied.

In an amended complaint, Murray alleged that harassment of her increased after she filed this lawsuit, culminating in a parent conference during which the parent

allegedly assaulted Murray with the connivance of defendant Connor. After the assault Murray was unable to work for most of the school year. She requested a transfer to another school, based on the recommendation of her psychiatrist. During the following summer, Murray was hospitalized with a bleeding ulcer. Upon her release from the hospital she informed the school, based on her doctor's recommendation, that she could return to work but that she should not be placed in a stressful situation and should rest if she felt stomach pain. The Personnel Director informed her that there was no position that met these requirements, that she should remain on sick leave, and that if her sick leave was exhausted before she could return to work without restrictions, she would have to request an unpaid leave of absence.

Plaintiff sought a temporary restraining order or preliminary injunction allowing her to return to work. On October 6, 1987, the parties entered into a consent order which provided that she could return to work, that she would be given a new supervisor, and that complaints about her teaching would be processed through special procedures.

On August 26, 1988, just before the start of the following school year, Phillips informed plaintiff that she could not use Learnball at all because he did "not consider Learnball to be benefiting our students." App. at 146. Murray then filed the motion for a preliminary injunction at issue here on September 13, 1988. On September 16, 1988 the district court denied the motion, "without prejudice to the right of plaintiff to seek a T.R.O. should something develop between now and the date scheduled for [the Bradley] trial." Order, Record at No. 77 (Sept. 16, 1988). On August 1, 1989, the district court granted summary judgment against Bradley.[1] Thereafter, on September 6, 1989 Murray requested a hearing on her preliminary injunction motion.[2] The

district court denied the motion on September 11, 1989, in an order stating:

> [U]pon consideration of the record in this matter, and the various memoranda submitted by counsel, plaintiff Diane Murray's Motion for a Preliminary Injunction is denied. The motion for Hearing on Request for Preliminary Injunction is dismissed as moot.

App. at 292.

## II.

■ In order to support a preliminary injunction, plaintiff must show both a likelihood of success on the merits and a probability of irreparable harm. *See Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). Additionally, the district court should consider the effect of the issuance of a preliminary injunction on other interested persons and the public interest. *See Arthur Treacher's Fish & Chips, Inc. v. A & B Management Corp.*, 689 F.2d 1137, 1143 (3d Cir.1982). A district court's denial of a preliminary injunction will be affirmed unless the court abused its discretion, committed an obvious error of law, or made a serious mistake in considering the proof. *See Hohe*, 868 F.2d at 70.

In support of her motion for a preliminary injunction, Murray argued that the Learnball ban abridges her right to academic freedom, is punishment for protected First Amendment activities, is in retaliation for having filed this action, and is overbroad and vague. On appeal she contends that she is likely to succeed on the merits of her claims and that if the injunction is not granted, she will suffer irreparable harm. She also contends that it was an error not to hold a hearing before denying her motion for injunctive relief.

■ The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction. *See* Fed.R. Civ.P. 65(a). Obviously, a hearing would

---

1. Bradley's appeal will be the subject of a separate opinion. *See Bradley v. Pittsburgh Bd. of Educ.*, No. 89–3615 (argued Mar. 15, 1990).

2. Although Murray made no formal motion refiling for a preliminary injunction, the district court had indicated that a hearing would be held based on the previously filed motion. Order, Record at No. 96 (Jan. 11, 1989).

not be necessary if the movant is proceeding on a legal theory which cannot be sustained, because then there could be no showing of a likelihood of success on the merits. We have also held that a decision may be based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved. *See Williams v. Curtiss–Wright Corp.*, 681 F.2d 161, 163 (3d Cir.1982) (per curiam). Moreover, a district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.

Thus, Murray's claim that a hearing was necessary rests on the validity of the legal theory on which she sought the preliminary injunction and the nature of the factual showing she made in support of her claim.

Murray contends that she has a right to academic freedom that encompasses the right to use Learnball. She describes Learnball as "a classroom management system" rather than as communicating any subject content material. She contends that "because it is not a teaching method and does not interfere in any manner with regulation by the state and school district concerning facts to be taught, it is mainly a method for Murray to express her positive personality, feelings, and philosophy to her students. In that regard ... Learnball is a political statement on Murray's part." Appellant's brief at 24.

In this case we do not have to delineate the scope of academic freedom afforded to teachers under the First Amendment rights. *See Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) (student armbands in protest against war protected; teachers mentioned in dictum); *Keyishian v. Board of Regents of the Univ. of New York*, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967) (striking down loyalty oaths). Some courts have found this right to encompass the right to exercise professional judgment in selecting topics and materials for use in class. *See, e.g., Kingsville Indep. School Dist. v. Cooper*, 611 F.2d 1109 (5th Cir.

1980) (dismissal of teacher for discussing racial issues in class violates First Amendment).

However, no court has found that teachers' First Amendment rights extend to choosing their own curriculum or classroom management techniques in contravention of school policy or dictates. *See, e.g., Hetrick v. Martin*, 480 F.2d 705 (6th Cir.) (pedagogical methods in classroom are not a protected form of speech), *cert. denied*, 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973); *Adams v. Campbell County School Dist.*, 511 F.2d 1242 (10th Cir.1975) (dismissal of high school teachers for failure to discipline their classes, being too informal, discussing current events at the expense of finishing the curriculum, and playing records in class permissible where dismissal not motivated by teachers' political opinions); *Ahern v. Board of Educ. of Grand Island*, 456 F.2d 399 (8th Cir.1972) (high school teacher discharged for introducing methods very similar to Learnball had no right to use methods or teach certain topics in contravention of school policy).

 Although a teacher's out-of-class conduct, including her advocacy of particular teaching methods, is protected, *see Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) (dismissal of a teacher for writing a letter to a newspaper criticizing the school violates First Amendment), her in-class conduct is not. *See Clark v. Holmes*, 474 F.2d 928 (7th Cir.1972) (per curiam) (upholding firing of teacher whose biology classes contained too much discussion of sex), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973).

In this case, it is undisputed that defendants have determined that Learnball is not an appropriate pedagogical method. They are entitled to make this determination. Murray has no right of academic freedom that extends to the choice of Learnball classroom management techniques despite the school's ban or that would render the ban unconstitutional.

 However, Murray also argues that defendants have engaged in a pattern

of harassment which is "a conscious effort to punish and restrict [her] First Amendment activity *outside* the classroom by curtailing her activities which symbolize her First Amendment activities inside the classroom." If the evidence sustains this claim, it would show conduct that violates Murray's First Amendment rights because the School District's undisputed right to control the classroom curriculum does not extend to a right to control a teacher's proselytization of teaching methods. *See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Nor can a teacher suffer retaliation for criticism of school officials outside the classroom. *See Trotman v. Board of Trustees of Lincoln Univ.,* 635 F.2d 216 (3d Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981).

██ Moreover, Murray contends that defendants' actions, including banning Learnball and refusing to permit her to return to work, were motivated not only by the desire to chill her First Amendment activity but also by the wish to retaliate for the filing of this lawsuit. An action that would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts. Although most cases concerning retaliation in violation of the right of access to the court have arisen in the prison context, the same principles have been applied in other areas. *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972) (conspiracy to deprive competitors of meaningful access to courts actionable); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310 (9th Cir.1989) (revocation of petroleum distribution license in retaliation for the filing of suit contesting local pollution regulations actionable under 42 U.S.C. § 1983); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422 (8th Cir. 1986) (complaint stated cause of action where alleged state officials conspired to condemn plaintiff's land in retaliation for a suit he filed against them in state court); *Cate v. Oldham,* 707 F.2d 1176 (11th Cir. 1983) (allegation that state and attorney general instituted a state action for malicious prosecution against plaintiff in retaliation for his suit against them states a constitutional claim).

Murray's final claim is that the ban on Learnball is vague and overbroad in violation of the First Amendment. Murray argues that Learnball includes a wide range of class management techniques, such as writing rules on the blackboard and dividing students into teams, many of which are used by other teachers. She argues that the vague direction puts her at risk of discipline because she does not know which particular activities defendants will consider to be part of Learnball. She claims that Bradley was fired for Learnball behavior such as using a gavel, letting students have access to the grade book, and not giving enough homework, and argues that her behavior is chilled and that it is difficult for her to teach.

Although Murray couches her claim in First Amendment terms, her argument is basically a due process one. We have stated in a different context that a rule that forbids the doing of an act in terms so vague that people of common intelligence must guess as to its meaning and differ as to its application violates due process. *See Aiello v. City of Wilmington,* 623 F.2d 845 (3d Cir.1980).

Because at least some of Murray's claims are legally viable, if the district court denied the preliminary injunction on the ground that all of her claims were legally defective, it erred as a matter of law. On the other hand, the district court may have concluded that Murray's affidavits failed to make a sufficient showing that the school's actions against her were motivated by her out-of-class advocacy of Learnball, her criticisms of the school, or her filing of a lawsuit.

By its terms the ban only covers the use of Learnball in the classroom. Murray averred in her affidavit that defendants had forbidden the use of Learnball, had interfered with her relationship with students, had criticized her in front of her students, had falsely accused her of violence and using abusive language, had engineered an attack on her by a parent, had

refused her transfer to another school, and had forced her to leave the school when she posted in her classroom a letter from Phillips banning Learnball, and that the ban against Learnball is so general that she does not know what classroom activities are prohibited. Significantly, the acts of harassment Murray points to, *i.e.* Connor's participation in the alleged assault by a parent, defendants' refusal to reinstate her as a teacher following her illness, and the many acrimonious exchanges between her and school officials concerning her use of Learnball and her failure to follow orders, appear to concern her use of Learnball and not her advocacy of Learnball.

■ Of course, we do not suggest that Murray will be unable to substantiate her retaliation claim and her First Amendment claim when the matter is ripe for a merits determination. However, Murray's failure to produce affidavits at this preliminary stage which provided any colorable factual support for her claim of retaliation or effort by defendants to control her out-of-class activity presented a record much different from those in the cases where we held that the failure to provide a hearing on a motion for a preliminary injunction was an abuse of discretion. *Cf. United Telegraph Workers v. Western Union Corporation,* 771 F.2d 699, 706–07 (3rd Cir.1985); *Professional Plan Examiners v. LeFante,* 750 F.2d 282, 288 (3d Cir.1984); *Sims v. Greene,* 161 F.2d 87 (3d Cir.1947). Thus, if the court denied the preliminary injunction without a hearing on these claims because of the inadequacy of the factual showing, we could not conclude that the decision was inconsistent with a sound exercise of discretion.

The difficulty we face is that the district court failed to comply with Rule 52(a) requiring findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction. *See* Fed.R.Civ.P. 52(a) ("in granting or refusing interlocutory injunction the court shall ... set forth the findings of fact and conclusions of law

which constitute the grounds of its action"). The language of the Rule is mandatory. *See, e.g., Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316–17, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940); *H. Prang Trucking Co. v. Local Union No. 469,* 613 F.2d 1235, 1238 (3d Cir.1980); *I.C.C. v. Cardinale Trucking Corp.,* 308 F.2d 435, 437 (1962). We have held that the Rule 52 requirements must be met even when there has been no evidentiary hearing on the motion. *See Educational Testing Serv. v. Katzman,* 793 F.2d 533 (3d Cir.1986) (applying Rule 52 although parties had waived hearing); *McWhinney v. Cain,* 289 F.2d 315 (3d Cir.1961) (per curiam).

The reasons for requiring the district court to give the required explanation for its decision are self-evident, and particularly applicable in this case. Foremost, as the Court noted in *Mayo,* "[s]uch findings are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal." 309 U.S. at 317, 60 S.Ct. at 520. Further, the existence of findings limits the issues on appeal and is important to the determination of res judicata or collateral estoppel questions that may arise in the future. *See LeFante,* 750 F.2d at 289. Arguably, factual findings when the court denies a preliminary injunction may serve little purpose when there has been no hearing,[3] but conclusions of law are nonetheless essential and the factual bases on which the conclusions are predicated, whether derived from affidavits or testimony, serve to permit evaluation of the legal conclusions reached by the district court.

In some cases we have vacated the order entered on a motion for preliminary injunction when the district court has failed to make adequate findings. *See, e.g., Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 353 F.2d 510 (3d Cir. 1965) (per curiam); *Bateman v. Ford Motor Co.,* 310 F.2d 805 (3d Cir.1962). In other cases, we have first looked to see whether the record provides a sufficient

---

**3.** Rule 65(d) specifically requires that every order *granting* an injunction shall set forth the reasons for its issuance.

basis to ascertain the legal and factual grounds for the grant or denial of the injunction. *See LeFante,* 750 F.2d at 289; *Educational Testing Serv.,* 793 F.2d at 543; *F.T.C. v. British Oxygen Co.,* 529 F.2d 196, 200 (3d Cir.1976) (in banc) (although lack of adequate findings would alone be basis for remand, case remanded because review of record did not clearly support injunction).

In this case our examination of the record discloses a plausible explanation for the denial of a preliminary injunction on Murray's claims other than her vagueness claim. However, Murray contends that because Learnball is a comprehensive classroom management system that incorporates commonly used activities, she cannot know what is meant by the Learnball ban and must guess as to its meaning. Although some central tenets of the program do seem to be identifiable, Learnball appears to include many activities that are commonly used by many teachers, including use of attention-getting devices and rewards for good performance. Thus Murray's contention that the ban is too amorphous to withstand a vagueness challenge is not without legal or colorable factual support.[4]

Because of the court's failure to comply with Rule 52, we are unable to determine why the district court rejected a preliminary injunction on this aspect. of Murray's claim. It follows that we must return this matter to the district court which should have the opportunity to make the requisite findings and conclusions. A hearing may provide a useful forum in which Murray's claim of vagueness and the school officials' rebuttal could be aired.

### III.

For the reasons set forth above, we will vacate the district court's order denying the preliminary injunction and remand for further proceedings. Unfortunately, due to events over which the district court had no control, this case has been passed to several district court judges. In light of its long pendency, the court may wish to consider whether the request for a preliminary injunction can be merged into the final disposition on the merits.[5] *See* Fed.R. Civ.P. 65(a)(2).

**4.** In this connection we note that Secretary of Education, in his review of Bradley's dismissal, found that there was not enough evidence in the record to determine exactly what Learnball was and thus he would confine himself to determining whether Bradley had violated any specific directives not to do particular acts (such as directives not to make salad in class or use a whistle as an attention-getting device).

**5.** Murray has moved to supplement the record on appeal to introduce evidence that after the

entry of the order denying injunctive relief, defendant Alice Turner, English Supervisor, presented a teaching model known as "cooperative learning" that incorporated basic elements of Learnball and encouraged teachers to use the model. In light of our remand of the case to the district court, "we see no purpose in granting [Murray's] motion to supplement the record" and therefore deny the motion. *Vanderbilt v. Geo. Energy Ltd.,* 725 F.2d 204, 211 (3d Cir.1983).