**PRISONERS' LEGAL ASSOCIATION, et al., Plaintiffs,**

v.

**James L. ROBERSON, Defendant.**

**Civ. No. 91–4460 (HLS).**

United States District Court, D. New Jersey.

May 26, 1993.

Howard J. McCoach, Deputy Atty. Gen., Richard J. Hughes Justice Complex, Trenton, NJ.

Lawrence L. Lustberg, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, Pro bono for plaintiffs.

## OPINION

SAROKIN, District Judge.

Before the court is defendant's motion for summary judgment.

*Introduction*

■ What distinguishes our society from most others is the continued right of access to the judicial process afforded even to those who have been charged, tried and convicted of a crime. In order to make such access meaningful, prisoners need not only the physical tools to create and submit their complaints and petitions for relief, but frequently due to their own deficiencies in education or language skills, they also need the intellectual tools possessed by others.

■ This right of access to the courts must be genuine, and prisoners must be free to exercise it without fear of retaliation for doing so. Because so many persons confined to our prisons are lacking in education, knowledge of the law, and language skills, other prisoners have undertaken the preparation of their fellow inmates' complaints,

appeals and petitions—the so-called "jailhouse lawyers." So prevalent and necessary has this practice become that groups have been formed, such as the group to which the plaintiffs in this case belong, with the approval of prison authorities.

These plaintiffs charge that they are the victims of harassment and retaliation because of their prison sanctioned efforts on behalf of other prisoners. If their allegations as to defendant's conduct are true, this conduct is to be condemned and enjoined. To seek to deny or discourage this assistance to inmates is no less a denial of their rights than to take from them the pen and paper necessary for the preparation of their petitions. For those who lack the knowledge, education or language skills to speak for themselves, their fellow inmates are often their only voice to our judicial system. This voice must not be stilled by interference, threats or retaliation.

*Background*

On October 10, 1991, the Prisoners' Legal Association (the "PLA") and seven inmates at East Jersey State Prison (the "prison"),[1] all staff members of the PLA,[2] filed a complaint against Officer James L. Roberson ("Officer Roberson"), a senior corrections officer at the prison, alleging that the defendant harassed members of the PLA because of their positions as paralegals at the prison. On June 1, 1992, plaintiffs filed a supplemental complaint, alleging additional incidents of harassment by defendant against three members of the PLA. Plaintiffs seek a declaratory judgment, injunctive relief and damages.

According to the allegations of the complaint and supplemental complaint, Officer Roberson has harassed each of the plaintiffs in retaliation for their role in the filing of lawsuits against the defendant and other prison authorities. More specifically, plaintiffs allege that defendant has harassed them by verbally abusing them,[3] searching their

---

1. The inmates are Wali Sekou Hamani, Jwyanza Kitaka, Ndegua Mwanza, Rubin Devalle, Idris Rahman, Rajahn Dipo Muata, and Rodney Roberts.

2. Plaintiffs allege that they are "graduates of a paralegal course, offered by the [department] of Corrections, and have been assigned to the Pris-

oners Legal Association, to represent the legal interest of the entire prison Population at the institution." Complaint, ¶ 1.

3. Plaintiffs Rahman and Devalle assert that defendant verbally harassed them. For example, plaintiff Rahman alleges that he encountered defendant in the inmate dining room where defen-

legal materials,[4] and denying them meals.[5]

*Discussion*

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), asserting first that the PLA lacks standing to bring this lawsuit and second that the undisputed facts in this case do not give rise to a claim under 42 U.S.C. § 1983. Plaintiffs oppose defendant's motion, arguing that they have standing to sue and that they have alleged violations of rights secured by the United States Constitution.[6]

This court can only grant summary judgment if there are no issues of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 84 (3d Cir.1987). To avoid summary judgment, the non-moving party must produce evidence " 'such that a reasonable jury could return a verdict for [him].' " *Zilich v. Lucht,* 981 F.2d 694, 696 (3d Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## I. The Sufficiency of the Claims

Ordinarily, the court would consider the question of standing before turning to the sufficiency of plaintiffs' claims. However, for reasons that will become apparent, the court deems it appropriate in this case to consider first defendant's argument that the plaintiffs' allegations do not state a claim under § 1983, thereby entitling the defendant to summary judgment.[7]

As the court has discussed, each individual plaintiff alleges that he was subjected to some form of harassment by the defendant because he is a prison paralegal. Defendant essentially argues that: 1) these alleged incidents of harassment do not give rise to a constitutional claim; and/or 2) the alleged connection between the alleged harassment and the individuals' status as prison paralegals is too tenuous for a reasonable jury to conclude that the alleged harassment was related to the inmate's status as a paralegal. Because the court concludes that plaintiffs have sufficiently alleged that the harassment was related to the fact that the plaintiffs provide legal assistance to inmates at the prison,[8] the court will only consider whether

---

dant called "him various obscene, abusive, offensive and profane names." Supp. Complaint, ¶ 4. Plaintiff Rahman further alleges that defendant stated during this incident that Rahman " 'wouldn't be able to file any lawsuits on [him] from a god dam grave yard nor double lock.' " *Id.* According to the supplemental complaint, "[d]ouble lock is the lock-up unit at East Jersey State Prison where inmates on pre-hearing detention, punitive detention, protective custody and pre-administrative Segregation houses at." Supp. Complaint, ¶ 4, n. 2.

4. Plaintiffs Hamani, Mwanza, Rahman and Roberts assert that the defendant searched their legal materials.

5. Plaintiff Kitaka claims that defendant denied him meals on two separate occasions.

6. Specifically, plaintiffs assert that defendant's conduct violated plaintiffs' rights under the Eighth and Fourteenth Amendments.

7. The court notes that the defendant also relies on certain deposition testimony taken from the individual plaintiffs to support his argument that the undisputed facts show that the plaintiffs have no constitutional claims against the defendant. However, the plaintiffs do not possess copies of these depositions and therefore assert that "they

can't formally respond to the deposition utilized by the defendants, because they (PLA) are not in possession of the depositions that was [sic] taken. The defendant only piecemeals the conversation of the plaintiff[s] to fit his fancy and to create a false illusion of the situation." Plt. Brief at 5. Although the court would ordinarily not consider information that is only in the hands of one party, the court finds it unnecessary to disregard specifically such information in this case because the court concludes that the deposition excerpts provided by defendant are not relevant to the court's ultimate conclusions.

8. Defendant's arguments on this matter would require the court to make factual findings, which is inappropriate on a motion for summary judgment. For example, defendant argues that with regard to plaintiff Hamani's allegation that the defendant searched his legal materials, defendant argues that "there is simply no indication that Officer Roberson knew that the folder contained legal materials." Def. Brief at 10. However, the plaintiff alleges that the defendant did know that the folder contained legal materials. Obviously, a jury must resolve this dispute of fact as to defendant's knowledge. Defendant's brief is replete with similar arguments that would require inappropriate factual findings. *See, e.g., id.* at 32 and 38–39.

plaintiffs have asserted constitutionally cognizable claims.

### A. The Eighth Amendment

■ Defendant correctly points out that verbal harassment does not give rise to a constitutional violation enforceable under § 1983. *See Murray v. Woodburn,* 809 F.Supp. 383 (E.D.Pa.1993) ("Mean [verbal] harassment of the sort alleged by [plaintiff] is insufficient to state a constitutional deprivation."); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987) (holding that the defendant's use of vulgar language does not give rise to a claim under § 1983). However, searches of a prisoner's person, cell or personal belongings, which are permissible in most circumstances,[9] can give "rise to an Eighth Amendment violation if they are conducted for 'calculated harassment.'" *Proudfoot v. Williams,* 803 F.Supp. 1048, 1051 (E.D.Pa.1992) (citing *Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984)). Similarly, a correctional institution must furnish prisoners with adequate food to satisfy its obligations under the Eighth Amendment. *Young v. Quinlan,* 960 F.2d 351, 364 (3d Cir.1992) (citing *Hassine v. Jeffes,* 846 F.2d 169, 174 (3d Cir. 1988)).

Nevertheless, as the Supreme Court has stated, the conditions of imprisonment do not reach the threshold of constitutional concern until a showing is made of "genuine privations of hardship over an extended period of time." *Bell v. Wolfish,* 441 U.S. 520, 542, 99 S.Ct. 1861, 1876, 60 L.Ed.2d 447 (1979). Applying this standard, one court found that the searching of a prisoner's cell 10 times in 19 days constituted an Eighth Amendment violation, *Scher v. Engelke,* 943 F.2d 921, 924–25 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992) (noting that "previously no other court has held that cell searches constitute an eighth amendment violation"), whereas another court has held that the alleged denial of a few meals does not rise to the level of an Eighth Amendment violation, *Bellamy v.*

*Bradley,* 729 F.2d 416, 419 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) ("[T]he testimony . . . fails to establish that appellees intentionally or negligently deprived Bellamy of his meals to the degree that a jury could find an Eighth Amendment violation.").

■ In this case, no plaintiff alleges that the defendant repeatedly searched his possessions. Rather, plaintiffs allege three instances when the defendant searched the possessions of one of the paralegals. Similarly, one plaintiff alleges that the defendant denied him a meal on two separate occasions. Thus, the court concludes that a jury could not reasonably find that either the alleged searches or the alleged deprivation of meals gives rise to a claim of cruel and unusual punishment under the Eighth Amendment.

### B. The Fourteenth Amendment

■ Although plaintiff's allegations as to defendant's conduct do not give rise to constitutional violations under the Eighth Amendment, they may give rise to constitutional violations under the due process clause of the Fourteenth Amendment. Plaintiffs have alleged that the defendant harassed them because they assist other inmates in the preparation of litigation. It is, of course, well-established that "[a]n action that would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts." *Bradley v. Pittsburgh Board of Education,* 910 F.2d 1172, 1177 (3d Cir.1990) (noting that "most cases concerning retaliation in violation of the right of access to the court have arisen in the prison context"); *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir.1990) (collecting cases). Thus, the court must determine whether defendant's alleged harassment implicates the constitutional right of access to the courts.

In *Bounds v. Smith,* the Supreme Court held that the right of access to the courts is fundamental and as such it is both guaran-

---

**9.** In *Hudson v. Palmer,* the Supreme Court held that because prisoners have no reasonable expectation of privacy, even unreasonable searches of their persons, cells and personal belongings do not violate the Fourth Amendment. 468 U.S. 517, 530, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984).

teed by the Fourteenth Amendment and actionable under § 1983. 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Subsequently, courts have held that this "right of access to the courts must be 'adequate, effective and meaningful' and must be freely exercisable without hinderance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir.1981); *DeTomaso v. McGinnis*, 970 F.2d 211 (7th Cir.1992) (holding that prison officials may not retaliate against inmates who seek or obtain access to the courts). Courts have further held that "[a]ny deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional impediment." *Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986); *see also Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir.1992) ("prison officials may not affirmatively hinder a prisoner's efforts to construct a non-frivolous appeal or claim.").

■ The constitutional right of access to the courts enjoyed by prisoners also places an affirmative obligation on "prison authorities 'to assist inmates in the preparation and filing of legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law.'" *Caputo v. Fauver*, 800 F.Supp. 168, 171 (D.N.J.1992) (noting that the state need not provide prisoners with both an adequate law library and legal assistance in order to fulfill its constitutional obligation); *but see United States ex rel. Para–Professional Law Clinic v. Kane*, 656 F.Supp. 1099, 1105 (E.D.Pa.1987), *aff'd*, 835 F.2d 285 (3d Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 511 (1988) ("The mere provision of an adequate law library does not necessarily satisfy the constitutional obligation set forth in *Bounds* ... [as] [a]n adequate law library, by itself, cannot provide meaningful access to the courts for those inmates unable to read and understand library materials."). Finally,

while a prisoner does have the right to legal assistance, he does not have a right to the assistance of a particular prisoner. *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir.1990) (holding that prisoners have no right to the assistance of a particular inmate "so long as prison officials make other assistance available").

■ At this juncture, the court must diverge briefly to discuss whose right of access to the courts is at issue in this case. Because a prisoner has no protected interest in providing legal representation to other inmates, *see id.*, the only right of access at stake in this case is that of the prisoners whom the plaintiffs assist in the preparation of litigation. The plaintiffs themselves have no constitutional right to represent other inmates at the prison, rather the general prison population has a right to receive assistance. However, a prisoner does not have the right to the assistance of a particular inmate as long as some assistance is available, *see Johnson v. Avery*, 393 U.S. 483, 489–90, 89 S.Ct. 747, 750–51, 21 L.Ed.2d 718 (1969). Thus, the general prison population's right of access is only implicated in this case if the PLA paralegals provide legal assistance that enables the prison to satisfy its constitutional obligations under *Bounds*. If the paralegals do not serve this function, then defendant's alleged harassment in retaliation for their legal activities, while reprehensible, did not interfere with any prisoner's right of access to the court, and thus the retaliatory action would not constitute a constitutional violation.

In light of plaintiff's essentially unrefuted allegations that PLA members are trained by the prison to serve as paralegals and that their legal activities are prison sanctioned,[10] it appears undisputed that the legal assistance provided by the inmate paralegals enables the prison to fulfill its obligations under

10. In their Complaint, plaintiffs allege that they "are all members of the Prisoners Legal association, located behind the walls of East Jersey State Prison. They are all graduates of a paralegal course offered by the deptpartment [sic] of Corrections, and have been assigned to the Prisoners legal Association, to represent the legal interest of the entire prison population at the institution." Complaint, ¶ 1. In an answer filed on December 11, 1991, defendant stated only that he "denies [all of] plaintiff's allegations." December 11, 1991 Answer, Statement of Claim, ¶ 1. In an answer filed on May 7, 1992, defendant states that he "is without sufficient knowledge or information sufficient to form a belief as to the truth of [plaintiffs'] allegations [as to the training and status of the paralegals]." May 7, 1992 Answer, ¶ 1.

*Bounds* and that without their assistance the prison population would be deprived of their constitutionally guaranteed right of access to the courts. Nevertheless, at this juncture, the court will not render a final determination that a right of access claim is at stake in this litigation without the benefit of affidavits which set forth precisely the role of the PLA paralegals in the prison's constitutionally mandated legal assistance system.

However, if the legal assistance provided by PLA paralegals is constitutionally necessary, then it is clear that defendant's alleged harassment of the paralegals gives rise to a constitutional violation. Harassment of the paralegals who assist prisoners with their litigation would certainly redound to the detriment of those prisoners and ultimately to the inmate population as a whole. In short, the prison could hardly fulfill its constitutional obligation to assist prisoners in preparing their legal claims if those providing the assistance are subject to retaliatory harassment by prison authorities.

 Finally, the court must consider defendant's contention that there is no right of access claim at stake in this case because no actual injury has occurred given that "plaintiff, PLA, and its members have sent numerous documents and correspondence to the court and have also filed a supplemental complaint." Def. Brief at 22. Relying on *Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir. 1982) and *Hudson v. Robinson*, 678 F.2d 462 (3d Cir.1982), the defendant argues that the plaintiffs have no right of access claim because "[t]he PLA has simply not been injured in any way." *Id.*

However, defendant's reliance on *Kershner* and *Hudson* is misplaced. As the Third Circuit pointed out in *Peterkin v. Jeffes*, 855 F.2d 1021 (3d Cir.1988), *Kershner* and *Hudson* involved claims by prisoners that the respective prisons failed to provide pads, pens, pencils, photocopying machines and immediate notary services in violation of the prisoners' right to access the courts. *Peterkin*, 855 F.2d at 1040. The *Peterkin* court explicitly distinguished right of access claims

based on a lack of "peripheral" resources—such as pens and paper—from claims based on a lack of "central" resources—an adequate law library or other legal assistance. *Id.* at 1041. The court stated:

> In cases where a prisoner's claim relates to access to resources other than legal assistance itself, an actual injury test can be helpful in determining whether an unconstitutional abridgement of access to the courts has occurred. Legal assistance by contrast—whether in the form of an accessible and adequate law library, court-appointed or other attorneys or para-professionals, or some combination of legal resources—is central, not peripheral, to the right of access to the courts that *Bounds* protects.

*Id.* Critically, the court added:

> We believe that in cases, like this case, directly involving prisoners' access to legal knowledge, *an actual injury necessarily occurs* by virtue of a prison's failure to provide the level of assistance required under *Bounds*. We hold, therefore, that where, as here, plaintiffs who possess standing to sue bring an access to the courts claim that alleges the inadequacy of 'law libraries or alternative sources of legal knowledge,' the analysis of whether an actual constitutional injury exists is simply the *Bounds* analysis.[11]

*Id.* (emphasis added). Because the court has concluded that the prison cannot fulfill its constitutional obligation under *Bounds* to assist prisoners in preparing their claims if those providing the assistance are subject to retaliatory harassment by prison authorities, plaintiffs have alleged actual constitutional injury under *Peterkin* and *Bounds*. *Cf. Caputo*, 800 F.Supp. at 171.

 In sum, the court concludes that the plaintiffs' allegations almost certainly give rise to a Fourteenth Amendment claim against the defendant. Whether plaintiffs actually have a constitutional claim depends only on whether the legal assistance provided by members of the PLA enables the prison

---

**11.** The *Peterkin* court noted that plaintiffs need not demonstrate actual injury or an instance of actual denial of access to the court to have stand-ing. *Peterkin*, 855 F.2d at 1041 n. 25 (citations omitted).

to satisfy its constitutional obligations under *Bounds*. At this juncture, the court is unwilling to render a final determination on this issue, despite the overwhelming indication that the paralegals are essential to the prison's legal assistance system, because appropriate affidavits have not been submitted to the court. Accordingly, the court rejects defendant's argument that the undisputed facts show that plaintiffs have failed to establish a constitutional violation and orders the parties to address whether the paralegal services provided by the PLA are necessary to afford the prison population meaningful access to the courts.

## II. Standing

[12] Conceding for argument's sake that plaintiffs have a constitutional claim at stake in this case, defendant alternatively challenges the standing of these plaintiffs to assert the claim. Defendant primarily challenges the PLA's standing to sue, although his brief is also interspersed with arguments that the individual inmates also lack standing to sue. Because the question of standing in this case is extremely complex and because the PLA must be represented by counsel,[12] the court deems it appropriate to appoint counsel to represent the plaintiffs and to await the submission of further briefing before rendering a final determination on the standing of the PLA and the individual plaintiffs to sue in this case.[13]

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is hereby denied in part and reserved in part. Counsel are directed to address all unresolved issues through appropriate briefing pursuant to a schedule to be fixed, after consultation with counsel, by Magistrate Judge Joel A. Pisano.

12. In his reply brief, defendant argues for the first time that the PLA cannot be a party to this suit because it is not represented by a licensed attorney—in his initial brief defendant argues that the PLA lacks standing to sue, not that the PLA does not have proper legal representation. Defendant correctly points out that the Supreme Court has recently noted that courts have consistently held that "corporations, partnerships or associations [may not] appear in federal court otherwise than through a licensed attorney." *Rowland v. California Men's Colony,* —— U.S. ——, ——, 113 S.Ct. 716, 720, 121 L.Ed.2d 656 (1993) (holding that an association of prisoners created by the prison was not a person within the meaning of 28 U.S.C. § 1915 and thus could not

proceed *in forma pauperis* in its suit against prison officials); *see also Taylor v. Knapp,* 871 F.2d 803, 806 (9th Cir.), *cert. denied,* 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 146 (1989) (holding that a non-attorney could not represent a non-profit corporation formed by five prison inmates). In light of this authority, the court agrees that the PLA must be represented by licensed counsel in order to proceed as a plaintiff in this suit.

13. Plaintiffs' counsel should also determine, in light of the court's decision, the propriety of renewing plaintiffs' application for a preliminary injunction.